UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-2989(DSD/JJG)

William Vaughn Minors:
A.V.S.V.J.V.W.V.,

       Plaintiffs,

v.                                        **ORDER**

Weis Management, Paragon
Property Management,
Laura Casey Singleton,

       Defendants.

    Oliver E. Nelson III, Esq., Timothy R. Schupp, Esq. and Flynn, Gaskins & Bennett, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, counsel for plaintiffs.

    Burke J. Ellingson, Esq., Sylvia I. Zinn, Esq. and Brendel & Zinn, 8519 Eagle Point Boulevard, Suite 110, Lake Elmo, MN 55042, counsel for defendants.

    This matter is before the court on defendants' motion for summary judgment. Based upon a review of the file, record and proceedings herein, the court grants in part and denies in part defendants' motion.

**BACKGROUND**

    This housing discrimination and unlawful eviction action arises out of plaintiff William Vaughn's ("Vaughn") tenancy at

Sibley Cove Apartments ("Sibley Cove") in Maplewood, Minnesota.[1] On June 18, 2005, Vaughn, a black man, and Lakesha Tucker ("Tucker"), a black woman, signed a lease agreement with Sibley Cove for a three bedroom apartment with a contemplated expiration date of May 31, 2006.[2] Because the apartment was a tax credit apartment under section 42 of the Internal Revenue Code,[3] an Addendum accompanied the agreement indicating that the apartment's occupants were Vaughn, Tucker and her two children. The Addendum stated that only the named occupants were permitted to live in the apartment and that any additional household members had to be approved by management and certified eligible for the tax credit before taking occupancy. The Addendum further provided that Vaughn and Tucker had to obtain annual certification of their eligibility for the tax credit, which required an interview with management and provision of certain financial information.[4]

---

[1] Paragon Property Management ("Paragon") managed Sibley Cove. Paragon was formerly known as Weis Management and is now known as Paramark Corporation.

[2] The lease agreement actually provides for a May 31, 2005, expiration date. The court assumes this to be a typographical error.

[3] Approximately half of the apartments at Sibley Cove are tax credit apartments.

[4] The remaining facts are nearly all disputed. As it must, the court considers all such facts in a light most favorable to Vaughn.

In February 2006, Vaughn was speaking with a Sibley Cove employee about his ongoing child custody battle with the state when Sibley Cove's property manager, Laura Singleton ("Singleton"), interrupted and stated that Vaughn was unlikely to get custody because "fathers don't win their kids, especially a person of color." (Vaughn Dep. at 50.)  In March 2006, however, the state granted Vaughn custody of his four children on a trial basis. Vaughn informed Singleton of this, and she responded that the children could not reside in the apartment because it would be over-occupied.[5]  Vaughn told her that he only had custody on a trial basis and that he was looking for an apartment that he and his children could move into when the lease expired.[6]  Singleton took no immediate action but informed Vaughn that Sibley Cove had no available apartments.

At the beginning of February, March and April 2006, Paragon sent notices to Tucker indicating that her household needed to recertify for tax credit eligibility.  Tucker decided not to renew the lease, and Vaughn made no attempt to recertify until mid-May 2006, when on several occasions he asked Singleton for the necessary paperwork.  Singleton, however, refused Vaughn's requests.  Beginning in mid-April, Vaughn on multiple occasions

---

[5] Sibley Cove limited occupancy in tax credit apartments to two individuals per bedroom in conformance with Department of Housing and Urban Development ("HUD") recommendations.

[6] Vaughn obtained full custody of his children in June 2006.

3

also sought a new lease for a three-bedroom apartment at Sibley Cove. Singleton denied those requests allegedly telling Vaughn that "his kind" was not welcome at Sibley Cove, and that she was "tired of you niggers." (Pl. Ex. I at 5.) Singleton also warned Vaughn that everyone in his apartment would be evicted if he did not remove his children. (Vaughn Dep. at 68.) On May 30, 2006, Singleton notified Tucker and Vaughn that Paragon would not be renewing their lease and that they had until noon on June 30, 2006, to vacate the apartment.[7] After receiving this notice, Vaughn approached Paragon employee Mavis Staples ("Staples") at Lakes Run – another apartment complex managed by Singleton and Paragon – about renting an apartment. Staples, however, refused to provide Vaughn with an application.[8] Vaughn also applied for an apartment at Wyngate Townhomes but was denied because of his monthly income and a negative reference from Singleton regarding over-occupancy.

Just before noon on Friday, June 30, 2006, Singleton's assistant Bobbie Jo Williams ("Williams") conducted the final walk through of Vaughn's apartment and obtained the keys. Vaughn,

---

[7] Despite the date in the lease agreement, the parties agree that June 30 was the relevant expiration date.

[8] Vaughn alleges that Staples told him that Singleton had instructed her not to permit Vaughn to fill out an application. Staples and Singleton, however, deny this allegation and indicate that Vaughn was always free to apply at Lakes Run. Although Vaughn has personal knowledge of his own conversation with Staples, he has no personal knowledge of Singleton's alleged statement, and the court will not consider such inadmissible hearsay.

Tucker and the children were still cleaning and asked to stay for a couple of hours to finish.  Williams received permission from Singleton to permit them to stay.  That same day, Vaughn spoke with Paragon's regional property manager, David Wiesner ("Wiesner"), at length about renting at Lakes Run.  Wiesner assured Vaughn that he could apply and permitted him to remain at Sibley Cove through the weekend until Lakes Run's office opened the following Monday.

On Sunday, July 2, 2006, Williams, who lived onsite, noticed that Vaughn, Tucker and the children remained in the apartment. Williams informed Singleton, who arrived at Sibley Cove soon thereafter.  Upon arriving, Singleton called the police.  Two police officers then accompanied Singleton to Vaughn's apartment, where Singleton confronted Vaughn with a trespass notice and told him to get out of the apartment.  During the confrontation, one of the police officers and Singleton allegedly used various racial epithets.  Vaughn initially told Singleton to call Wiesner, but eventually Vaughn and the rest of the household complied with Singleton's demand and vacated the apartment.

Vaughn filed a complaint with HUD, and on July 13, 2006, he filed a pro se complaint on behalf of himself and his four minor children in federal district court.  Vaughn subsequently obtained counsel and amended his complaint to assert familial status and race discrimination claims under 42 U.S.C. § 3604 and a Minnesota state law claim for unlawful eviction pursuant to Minnesota

Statutes §§ 504B.231 and 504B.321.[9]  Defendants now move for summary judgment on all claims.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon

---

[9] On June 15, 2007, the parties filed a stipulation with the court agreeing to permit plaintiffs to file an amended complaint and attached the complaint as an exhibit.  On June 18, 2007, the magistrate judge granted permission to plaintiffs to file an amended complaint.  Plaintiffs, however, never filed the amended complaint.  Nevertheless, based on the parties' stipulation and because proceedings have continued as if the amended complaint had been filed, the court treats the exhibit attached to the parties' stipulation as the governing complaint.

mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II.  Fair Housing Act Claims**

The Fair Housing Act prohibits the denial of housing on the basis of race or familial status. See 42 U.S.C. § 3604. Absent direct evidence of discrimination, courts apply the burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir. 1996); United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992). Pursuant to that framework, the plaintiff must first make a prima facie showing of discrimination. McDonnell Douglas, 411 U.S. at 802. Under the Fair Housing Act, this prima facie showing varies depending on the specific facts and allegations of each case. Badgett, 976 F.2d at 1178. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct. McDonnell Douglas, 411 U.S. at 802. The

plaintiff must then rebut the defendant's proffered reason by showing that it is pretext for unlawful discrimination. Id. at 804.

### A. Refusal to Rent

It is unlawful under § 3604(a) "to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Vaughn claims that defendants unlawfully refused to renew his lease and prohibited him from leasing a different apartment at Sibley Cove.[10]

#### 1. Refusal to Renew Lease

There is no direct evidence that defendants discriminated against Vaughn in refusing to renew his lease because of his race or familial status. Therefore, the burden-shifting analysis applies. To make a prima facie case of refusal to renew a lease under 42 U.S.C. § 3604(a) the plaintiff must establish that (1) he is a member of a protected class, (2) the defendant knew about his membership in that class, (3) he was qualified and willing to continue renting from the defendant and (4) the defendant refused to allow him to continue renting the apartment. See Radecki v.

---

[10] The parties subsume these arguments into one overarching claim. Nevertheless, the court considers the claims separately despite some ambiguity in the record as to whether Vaughn was attempting to renew his lease or rent a different apartment when various alleged incidents occurred.

Joura, 114 F.3d 115, 116 (8th Cir. 1997) (per curiam) (applying standard to 42 U.S.C. § 3604(f)). In this case, the first,[11] second and fourth factors are uncontested. Defendants, however, maintain that Vaughn was not qualified to continue renting his apartment at Sibley Cove because he failed to complete the tax credit recertification paperwork. Vaughn concedes that he did not complete the necessary paperwork. Nevertheless, Vaughn argues that Singleton prevented him from obtaining and filling out the paperwork.

The final notice sent to the Tucker household admonishing it to recertify indicated that failure to provide the necessary information by May 10, 2006, would result either in an increase in the rent or termination of the lease. Vaughn alleges that he approached Singleton on May 9, 2006, to obtain the recertification paperwork but was rebuffed. Defendants dispute this assertion, and Singleton and Williams testified that Vaughn could have obtained the recertification paperwork at anytime. Defendants also maintain that Vaughn could have obtained the paperwork from Paragon's corporate office. Accepting Vaughn's allegations as true, however, there is a genuine issue of fact as to whether Vaughn was actually

---

[11] Vaughn qualifies for protected status because of his race and familial status. The Fair Housing Act defines "familial status" as "one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k).

denied the opportunity to complete the recertification paperwork. Moreover, Vaughn has submitted evidence creating a genuine issue of fact as to whether he would have qualified for the tax credit if Singleton allowed him to fill out the paperwork. In mid-May 2006, Vaughn had a part-time job making eight dollars and thirty-two cents an hour. Vaughn was also receiving approximately $800 a month in Social Security benefits. Sibley Cove's records indicate that at least one household with one adult and two children and a comparable income rented a tax credit apartment. In light of this evidence and Vaughn's allegations, Vaughn has established a prima facie case.

Defendants offer two reasons for refusing to renew Vaughn's lease. First, defendants argue that Vaughn failed to complete the recertification paperwork. As discussed above, however, an issue of fact remains as to whether Singleton deliberately denied Vaughn that opportunity. Second, defendants maintain that they did not renew Vaughn's lease because of the occupancy violation. The record, however, indicates that Tucker and her children were leaving and that Vaughn sought the apartment only for himself and his four children, which would have satisfied Sibley Cove's occupancy standard. Moreover, even if defendants refused to renew Vaughn's lease because of his past occupancy violations, Singleton's alleged racial epithets and threat of eviction if Vaughn did not remove his children from the apartment, create an

issue of fact as to whether the over-occupancy justification is mere pretext for unlawful discrimination. Therefore, summary judgment on this claim is not warranted.

### 2. Refusal to Provide New Lease

Vaughn further argues that Singleton denied him a new lease on another three-bedroom apartment because of his race and familial status.

#### a. Race

Both parties address Vaughn's race discrimination claim under McDonnell Douglas. The burden-shifting analysis, however, does not apply to this claim because the record contains allegations of direct evidence of Singleton's racial animus in refusing to lease Vaughn a new apartment. See Ring v. First Interstate Mortgage, Inc., 984 F.2d 924, 927 (8th Cir. 1993). Specifically, Vaughn testified that on one occasion Singleton refused his request for a new lease because she was not going to rent to "his kind." (Vaughn Dep. at 63-64.) Further, Vaughn's answer to defendants' fifth interrogatory indicates that on May 8, 2006, in denying Vaughn's request for a new lease, Singleton stated that she was "tired of you niggers." (Pl. Ex. I at 5.) Taking the evidence in a light most favorable to Vaughn, the record indicates that Singleton

directly discriminated against him in refusing to permit him to lease another apartment at Sibley Cove because of his race.[12] Therefore, summary judgment on this claim is not warranted.

### b.   Familial Status

No direct evidence indicates that Singleton refused to allow Vaughn to obtain a new lease at Sibley Cove because of his familial status, and the McDonnell Douglas burden-shifting analysis applies. To establish a prima facie case of discrimination for refusing to rent, a plaintiff must show that (1) he is a member of a protected class, (2) the defendant knew about his membership in that class, (3) the defendant refused to rent to him, (4) he was qualified to rent and (5) others similarly situated but not in the protected class were permitted to rent apartments. Cf. Radecki, 114 F.3d at 116; Rowe v. Union Planters Bank, 289 F.3d 533, 535 (8th Cir. 2002) (citing Noland v. Mortgage Co., 122 F.3d 551, 553 (8th Cir. 1997))

Vaughn has offered no evidence creating a factual issue as to whether individuals without families were allowed to rent at Sibley Cove. Indeed, the specific demographic evidence in the record, limited to four apartments, shows that all of the apartments were rented by at least one adult with at least one minor child. Therefore, Vaughn has not established a prima facie case of

---

[12] The court notes, however, that Singleton is the mother of biracial children, and the record indicates that nearly half of the tenants at Sibley Cove were black at the time of this incident. Nevertheless, at this stage of the proceedings, the court accepts Vaughn's allegations as true.

familial status discrimination for Singleton's alleged refusal to provide him with a rental application, and the court grants summary judgment on this claim.[13]

### B. False Representation

In his amended complaint, Vaughn also asserts race and familial status discrimination under § 3604(d). Section 3604(d) prohibits representation "to any person because of his race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." Vaughn, however, did not mention § 3604(d) in his brief. Although this claim is related to Vaughn's claims under subsection (a), absent some direct reference and argument specific to § 3604(d), the court will not make Vaughn's arguments from whole cloth. Therefore, summary judgment on this claim is warranted.

### III. Unlawful Eviction

Finally, Vaughn claims that he and his children were unlawfully evicted. Minnesota law requires certain procedures for bringing an eviction action. Minn. Stat. § 504B.321. Further, a

---

[13] Vaughn's claim also fails to the extent that he contends he was wrongfully denied an application at Lakes Run based upon his protected status. Vaughn's only relevant contact at Lakes Run was with Staples, and there is no admissible direct evidence that she refused to give him an application based on his race or familial status. In addition, Staples, not Singleton, refused to provide Vaughn with an application, and Vaughn has presented no evidence that others similarly situated but not in the protected class were permitted to apply for and rent apartments at Lakes Run.

tenant may recover damages if "a landlord ... or other person acting under the landlord's direction or control unlawfully and in bad faith removes ... a tenant from residential premises." Minn. Stat. § 504B.231.  Defendants argue that Vaughn was not evicted because his lease had expired and he was therefore no longer a tenant.  An issue of fact, however, remains as to whether Wiesner extended Vaughn's lease through the weekend.  Therefore, the court denies summary judgment on this claim.

## CONCLUSION

Based upon the above, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 32] is granted in part and denied in part.

Dated:  May 12, 2008

                                            s/David S. Doty  
                                            David S. Doty, Judge  
                                            United States District Court